

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

TM:EAG
F.#2010R01822

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

November 22, 2010

**By ECF**

The Honorable Jack B. Weinstein
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

      Re:  United States v. Armando Rea
           Criminal Docket No. 10-767 (JBW)

Dear Judge Weinstein:

      The government respectfully submits this letter to notify the Court of a potential attorney conflict of interest that has come to the government's attention in the above-captioned case against the defendant Armando Rea, a member of the Bonanno organized crime family of La Cosa Nostra ("Bonanno family").  Specifically, the government has identified two potential conflicts of interest.  First, it appears that a third party is paying Rea's legal fees.  Second, it appears that Rea's attorney may represent a close criminal associate of Rea. Accordingly, the government requests that the Court appoint Curcio counsel for the defendant and schedule a Curcio hearing after appointed counsel has had adequate time to consult with the defendant.

      As set forth below, the government advises the Court of these circumstances in accordance with Rule 44(c) of the Federal Rules of Criminal Procedure and pursuant to its obligation under Second Circuit law so the Court may conduct the appropriate inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982).  See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995).

I. <u>Background</u>

    A.   <u>Armando Rea</u>

On October 6, 2010, a grand jury returned an indictment charging Armando Rea, an inducted member of the Bonanno family, with racketeering conspiracy. On October 14, 2010, Rea was arrested inside of his sparsely-furnished, one-bedroom apartment in Las Vegas, Nevada. Upon his arrest, Rea stated that he was unemployed and had just $36 in his bank account and no other tangible assets. He thereafter completed a financial affidavit stating that he lacked sufficient funds to retain an attorney.

On November 2, 2010, however, while Rea was being removed in custody from the District of Nevada to the Eastern District of New York, John C. Meringolo, Esq., of Meringolo and Associates, P.C., entered a notice of appearance indicating that he had been retained to represent Rea. (<u>See</u> <u>United States v. Rea</u>, No. 10 CR 767 (JBW), Docket No. 3). On November 11, 2010, Meringolo filed a letter, stating that Rea was "dependent on Social Security," had "severely limited income," incurred $300 in monthly medical expenses and could not afford the cost of GPS monitoring (a condition of his bail).

    B.   <u>Ronald Carlucci</u>

Numerous cooperating witnesses have advised that Rea shared a close criminal friendship with Bonanno family member Ronald Carlucci. As part of its continuing investigation of the Bonanno family, on October 26, 2010 and November 2, 2010, a special agent with the Federal Bureau of Investigation ("FBI") approached Carlucci at his residence. When the agent arrived at Carlucci's residence on November 2, 2010, the agent observed a blue Maserati parked directly in front of Carlucci's driveway. Upon knocking on the door to Carlucci's residence, Carlucci stepped outside, shutting the door behind him, and spoke to the agent for approximately ten minutes. The following day, at Rea's arraignment, Mr. Meringolo, who according to public records owns a 2006 blue Maserati, made a comment to the special agent who had met with Carlucci the previous evening regarding the agent's November 2, 2010 visit with "Ronnie."

II. <u>Applicable Law</u>

    A.   <u>Overview</u>

The Sixth Amendment affords a criminal defendant the

3

right to effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003).  That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993).  While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

     To determine if the defendant's counsel is burdened by a conflict of interest, the court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994).  An actual conflict exits "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted).  A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).  If the attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney.  See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995).

     Regardless of the severity of the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160.  "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right to the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931.  Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

1. <u>Third-Party Fee Arrangements</u>

"By their very nature, third-party fee arrangements create numerous ethical pitfalls into which even the most wary criminal defense attorney may stumble." <u>United States v. Duran-Benitez</u>, 110 F. Supp. 2d 133, 151-52 (E.D.N.Y. 2000) (citing New York Disciplinary Rule 5-107). "These ethical pitfalls become especially dangerous when a defendant's lawyer is hired and paid by 'the operator of the alleged criminal enterprise.'" <u>Duran-Benitez</u>, 110 F. Supp. 2d at 152 (quoting <u>Wood</u>, 450 U.S. at 269). In such situations, the Supreme Court wrote in <u>Wood</u>, there exists a "risk that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest." <u>Wood</u>, 450 U.S. at 269; <u>see also</u> <u>In re: Grand Jury Subpoena Served Upon John Doe, Esq.</u>, 781 F.2d 238, 248 n.6 (2d Cir. 1986) (noting that when "the third party is the head of a criminal enterprise of which the clients are members . . . an ethical question arises as to whether the attorney's loyalties are with the client or the payor").

2. <u>Representation of an Unindicted Co-Conspirator</u>

Simultaneous representation of a defendant and an unindicted coconspirator may constitute a conflict of interest if, had there been a joint trial, counsel would have been forced to take contradictory positions in defending both. <u>United States v. Friedman</u>, 854 F.2d 535, 574 (2d Cir. 1988) (no conflict arose from counsel's simultaneous representation of defendant on racketeering charges and an unindicted co-conspirator in view of the co-conspirator's "marginal relevance" to the case). Such representation of an unindicted co-conspirator may create a conflict limiting the defendant's ability to enter into plea negotiations or cooperate with the government. <u>See</u> <u>United States v. Christakis</u>, 238 F.3d 1164, 1169 (9th Cir. 2001) (attorney's interest in protecting the former client conflicted with the defendant's interest in implicating the former client for reduced sentencing); <u>United States v. Allen</u>, 831 F.2d 1487, 1496-97 (9th Cir. 1987); <u>but see</u> <u>United States v. Pizzonia</u>, 415 F. Supp. 2d 168, 180 (E.D.N.Y. 2006) ("[s]imultaneous representation of an unindicted co-conspirator does not necessarily create an 'inherent conflict' limiting a defendant's ability to enter plea negotiations").

5

B.   Curcio Waiver

If the conflict of interest is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in Curcio.  See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986).  In summarizing the Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90.  By routinely relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims.  See United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

The need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial.  "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel."  Stantini, 85 F.3d at 15.  Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered."  Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996).  Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage.  See id. ("'[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.'") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

6

III. Discussion

      Based on the facts set forth above, the government is presently aware of two potential conflicts of interest.  First, in light of Rea's lack of funds, it appears that a third party is funding Mr. Meringolo's legal representation of Rea.  Second, it appears that Mr. Meringolo may also represent Ronald Carlucci, an unindicted co-conspirator who is a close criminal associate of Rea.  In either event, Mr. Meringolo may be precluded from properly advising Rea as to his options in this case because certain options may be adverse to Carlucci or a third party funding Rea's legal fees.  At a minimum, the defendant, a close associate of Carlucci in the Bonanno family, could implicate Carlucci and other members and associates of organized crime in various crimes to potentially receive a reduced sentence; Rea's cooperation with the government would therefore be directly adverse to these individuals' interests.

IV. Conclusion

      For the foregoing reasons, the Court should notify the defendant of the conflicts of interest raised above and conduct an appropriate inquiry pursuant to Rule 44(c) and Curcio.

                                    Respectfully submitted,

                                    LORETTA E. LYNCH
                                  UNITED STATES ATTORNEY

                    By:          /s/
                          Elizabeth A. Geddes
                          Assistant U.S. Attorney
                          (718) 254-6430

cc:  John C. Meringolo, Esq. (via ECF)