

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

AB:CMP/RJN
F.#2010R01822

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 12, 2011

**BY HAND AND ECF**

The Honorable Jack B. Weinstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:  United States v. Armando Rea
         Criminal Docket No. 10-767 (S-2) (JBW)

Dear Judge Weinstein:

    The government respectfully submits this letter in response to the defendant's objections to the Probation Department's Presentence Report ("Def. Obj.") and his sentencing submission ("Def. Let."), dated May 2, 2011 and May 3, 2011, respectively. Rea is scheduled to be sentenced by the Court on May 17, 2011 at 10:00 a.m.

    On April 29, 2011, the United States Probation Department issued a Presentence Investigation Report ("PSR") for Rea. According to the PSR, the defendant's total offense level is 13, with a corresponding range of imprisonment of 12 to 18 months. PSR ¶¶ 16, 63. The government concurs with the Probation Department's calculation and analysis, and respectfully submits that a Guidelines sentence in this case is appropriate.

I.    Background

    The day after jury selection, on February 15, 2011, Rea pled guilty to a superseding information (S-2) charging him with extortion conspiracy in violation of 18 U.S.C. § 1951(a). This charge is based on Rea's conduct as a member of Local 807 of the International Brotherhood of the Teamsters and, in particular, on his work at the Jacob Javits Center in the early 1990s. As set forth in the PSR, Rea not only used his membership in organized crime to assist in obtaining work at the Javits Center, he also used his membership in organized crime to improve his position there when he was displeased with the amount and type of work he was receiving. PSR ¶¶ 2-4.

II.  The Extortion Conspiracy

The defendant objects to the last sentence of paragraph 2 of the PSR (Def. Obj. ¶ 2a), which explains that Rea, dissatisfied with the type of work he was receiving at the Javits Center, complained to Generoso Barbieri, who at the time was an acting captain in the Bonanno organized crime family.  Barbieri then interceded on Rea's behalf.  Similarly, the defendant objects to paragraph 3 of the PSR (Def. Obj. ¶2b), which explains that the defendant also sought assistance from Anthony "Anthony Black" Furino, who was then a powerful Bonanno associate[1] and Local 807 member and exerted substantial influence over the unions at the Javits Center.

In sum, the government was prepared to prove at trial, largely through witness testimony, that Rea repeatedly turned to organized crime members and associates such as Barbieri, Furino and Bonanno captain Anthony "Tony Green" Urso for assistance in his job at the Javits Center, which was central to his involvement in the charged conspiracy.  Notably, Rea himself admitted to being a "made member" of the Bonanno family during his allocution:

> THE COURT:      Were you a made member?
> THE DEFENDANT: Yes.
> THE COURT:      And was the Mafia or the organization connected with the Mafia one that exercised influence on your behalf to get the job?
> THE DEFENDANT: Yes.

2/15/11 Tr. at 19:13-18.  While the government does not seek a Fatico hearing, the government respectfully submits that his request to strike these portions of the PSR should be denied as they form an integral part of his offense conduct, as Rea himself admitted during his allocution.

III. The Murder Conspiracy

In his letter, Rea also argues that the government's willingness to enter the plea agreement with the defendant indicated its inability to prove, among other things, the defendant's involvement in a conspiracy to murder Charles "Crazy Charlie" Travella in 1992, and as a result of this alleged lack

---

[1] Furino later became a made member of the Bonanno family.

of evidence, information about the Travella murder conspiracy should be stricken from the PSR. That is not the case. In fact, multiple witnesses were prepared to testify in this case regarding Rea's involvement in the murder conspiracy.

To summarize, James Tartaglione, the captain of Rea's crew, was prepared to testify that he had ordered Rea and the other members of his crew to find and kill Travella based on a dispute between Tartaglione and Travella about the collection of "joker poker" machine proceeds. Likewise, Barbieri, who was also a member of Tartaglione's crew and shortly thereafter became its acting captain, was also prepared testify that Tartaglione had ordered Rea and others to hunt for Travella and to be armed when doing so. Barbieri was further prepared to testify that, on two occasions, he checked on Rea and found that, as instructed, Rea was parked outside Travella's residence in Manhattan with a co-conspirator, ready to kill Travella if Travella arrived.

Although the defendant did not plea guilty to the murder conspiracy, that does not preclude the Court from considering the defendant's other conduct when determining an appropriate sentence. See 18 U.S.C. § 3661. The government, however, does not seek a Fatico hearing with respect to the facts of the conspiracy.

IV.   The Defendant's Health and Family Circumstances

Although the defendant's health problems, while serious, are not exceptional, the government agrees that they are appropriate factors for consideration at sentencing pursuant to 18 U.S.C. § 3553(a).

V.   Conclusion

In light of the nature and circumstances of the offense, which contributed to widespread corruption at the Jacob Javits Center for close to a decade, and the history and characteristics of the defendant, in particular his admitted status as a made member of the Bonanno family, the government respectfully submits that a sentence within the agreed-upon

Guidelines range of 12 to 18 months is appropriate in this case pursuant to 18 U.S.C. § 3553.

                    Respectfully submitted,

                    LORETTA E. LYNCH
                    United States Attorney

By:      /s/
                    Rachel J. Nash
                    Cristina M. Posa
                    Assistant U.S. Attorneys
                    (718) 254-6072/6668

cc: John C. Meringolo, Esq.